IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Janice G. Tate,                         )        Civil Action No. 8:12-cv-03602-DCN-JDA
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )        **REPORT AND RECOMMENDATION**
                                        )        **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,                      )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )

      This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

      On June 10, 2010, Plaintiff filed an application for DIB, alleging an onset of disability date of May 10, 2010.  [R. 112–113. ]  The claim was denied initially on October 22, 2010 [R. 94, 96-100], and on reconsideration on January 2, 2011 [R.  95, 105–07], by the Social Security Administration ("the Administration").  Plaintiff requested a hearing before an

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

administrative law judge ("ALJ"), and on December 2, 2011, ALJ Gregory M. Wilson conducted a de novo hearing on Plaintiff's claims. [R. 53–91.]

The ALJ issued a decision on February 9, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 8–32.] At Step 1,[2] the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity since May 10, 2010, her alleged onset date. [R. 13, Findings 1 & 2]. At Step 2, the ALJ found Plaintiff had severe impairments of fibromyalgia and degenerative disc disease. [R. 3, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of depression and anxiety [R. 16–18, 22],and dermatitis [R. 23]. At Step 3, the ALJ determined none of these impairments, singly or in combination, met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 1.04, Disorders fo the spine. [R. 18, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant retains the ability to lift and/or carry up to 20 pounds on a occasional basis, lift and/or carry up to 10 pounds frequent basis, stand/walk a total of 6 hours out of an 8-hour workday, and sit for about 6 hours out of an 8-hour workday. The claimant's postural activities are limited to occasional with the exception of balancing, which is limited to frequent. Environmental limitations include avoiding concentrated exposure to temperature extremes, vibration and hazards.

[R. 18, Finding 5.]  Based on this RFC, at Step 4, the ALJ found Plaintiff could perform her past relevant work as a customer service representative. [R. 27, Finding 6.] Additionally,

---

[2] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

the ALJ found that, based on Plaintiff's age, education, work experience and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. [*Id*.]  Consequently, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act.[3]  [R. 28, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1–5.]  Plaintiff filed this action for judicial review on December 20, 2012.  [Doc. 1.]

### THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and must be reversed and remanded because the ALJ

1.    erred in finding that Plaintiff can perform a wide range of light work, as this finding is contradicted by opinion evidence from the treating physician Dr. LeBlond and the agency's consultative examining physician Dr. Schwartz [Doc. 9 at 1, 7–14];

2.    improperly analyzed Plaintiff's pain complaints [*id*. at 2, 15–20]; and,

3.    applied an improper legal standard by setting forth skilled occupations that Plaintiff could perform without first identifying what skills Plaintiff has that would transfer into these occupations [*id*. at 1, 20–21].

The Commissioner, on the other hand, submits that ALJ's decision is supported by substantial evidence, specifically arguing the ALJ

---

[3]To be entitled to DIB, Plaintiff had to prove that she was disabled on or before her date last insured. 20 C.F.R. §§ 404.315(a) (describing who is entitled to DIB); 404.130 (explaining disability insured status); *see also Henrie v. U.S. Dep't of Health & Human Servs*., 13 F.3d 359, 360 (10th Cir. 1993).

1.    properly weighed the "checklist opinion" of Dr. LeBlond as unsupported by medially acceptable clinical and laboratory diagnostic techniques and "inconsistent with the other substantial evidence in the record"; and properly weighed Dr. Schwartz's opinion finding it inconsistent with the findings of other state agency physicians [Doc. 11 at 12–20];

2.    correctly analyzed Plaintiff's credibility with respect to her statements concerning intensity, persistence and limiting effects of her symptoms, pointing out the inconsistencies in her statements throughout the record and her testimony that erode her credibility, and further properly emphasizing the inconsistencies between the objective findings in the physical examinations and the alleged severity of her symptoms [*id*. at 20–25]; and,

3.    complied with SSR 82-41 at Step 5, making alternative findings regarding skilled occupations that exist in the national economy that Plaintiff could perform although, at Step 4, the ALJ properly found plaintiff could perform her past relevant work [*id*. at 25–26].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

4

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

6

the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is

9

generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

## B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

## C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

11

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527©.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Brief Medical History

Plaintiff worked as a customer service provider in a bank for 25 years.  [R. 225.] She became unable to perform her job duties due to complaints of constant pain in the lumbar spine across the beltline. [*Id*.]  Plaintiff has described the pain as "achy" with occasional "sharp to stabbing sensations, usually worse with prolonged sitting, walking, getting up out of a chair [and] driving." [*Id*.]   Plaintiff also suffers from Prurigo and has a

history of difficulty with depression. [R. 226.] Plaintiff reports experiencing constant depression characterized by disturbed sleep, loss of motivation and a sad mood. [*Id*.] Plaintiff filed the instant application for disability benefits alleging chronic neck and back pain, radicular complaints, depression, fibromyalgia, and arthritis in the hips and back. [R. 171.]

**Weight Assigned to the Treating Physician Opinions**

Plaintiff argues the ALJ erred by not giving Plaintiff's treating physicians' opinion controlling weight, and by giving more weight to the opinions of agency non-examining physicians. [Doc. 9 at 9.] Plaintiff specifically takes issue with the ALJ's treatment of the opinions of treating physician Dr. LeBlond and agency consultative examiner Dr. Schwartz. [*Id.* at 9–15.]

### Dr. LeBlond's Opinion

Dr. Robert E. LeBlond ("Dr. LeBlond") of Upstate Medication Rehabilitation began seeing Plaintiff in May 2002 [R. 284]; however, the medical records before the Court only contain treatments notes commencing in May 2010. [R. 225.] These record show that, during a one month follow-up visit on June 28, 2010 to fill out disability paperwork, Plaintiff's chief area of complaint was her lumbar spine across the beltline. [*Id*.] Plaintiff represented that her pain is present 100% of the time, is achy, but can also have sharp to stabbing sensations, usually worse with prolonged sitting, walking, getting up out of a chair, and driving. [*Id*.] She also represented that she has neck pain most of the time with intermittent flare ups, and the pain is almost intolerable unless she rotates her head. [*Id*.] Plaintiff states she is comfortable at rest, but static positions also cause pain. [*Id*.]

18

Upon physical examination, Dr. Leblond found Plaintiff's

> [u]pper and lower extremities showed good strength.  DTRs equal. Sensation intact.  Negative SLR. Station and gait stiff. Neck has restricted ROM due to ACDF. She is tender along the cervical paraspinals and traps. Low back is tender along the paraspinals along the right facets and SI joint. Pelvic obliquity seen with forward flexion.  In supine position, there is a leg length discrepancy.  This is some mild tenderness along the right greater trochanter and piriformis muscle.

[R. 225.]

Dr. LeBlond's impression was that Plaintiff had chronic neck, upper back and low back pain with progressive worsening over a long period of time. [*Id*.]  He also indicated that she may be a candidate for procedures and physical therapy and was on a fairly high dose of medication.  Dr. LeBlond opined that "[a]t this point in time I would say that she was unable to return to work, although I would hope that procedures such as a rhizotomy might provide an improvement in quality of life, as would physical therapy." [*Id*.]

During a follow up visit in August 2010, Plaintiff presented with continued complaints of chronic neck and back pain, with intermittent flare-ups. [R. 251.]  Plaintiff stated that the pain limited her ability to do housework as well as stand or bend. [*Id*.]  She also reported pain in the left knee with some swelling, pain in the neck going down the right arm, and trouble with fatigue. [*Id*.]  On physical examination, the doctor noted

> Motor is 5/5 except for some give-way weakness left knee extension. Sensation is intact. Deep tendon reflexes are decreased but equal.  Station and gait are antalgic.  Back with tenderness in the paraspinals.  Some pain with facet loading. Extremities: No clubbing, cyanosis, Trace endema about the left knee with diffuse tenderness. No ligamentous instability.

19

[*Id*.]  Dr. LeBlond's impression was chronic degenerative spine pain with probable FMS. Dr. LeBlond also opined that Plaintiff was stable medically and using medications appropriately, but would not be able to return to work and should pursue SSDI. [*Id*.]

Dr. LeBlond saw Plaintiff again on December 23, 2010, for follow-up with respect to her chronic degenerative neck and back pain as well as FMS.  [R. 264.] Plaintiff indicated no change in strength or sensation.  Id.  On physical exam, Plaintiff's motor was 5/5, sensation intact, DTRs decreased but equal, and station and gait antalgic. [*Id*.]  Dr. LeBlond also noted mild restriction in ROM. [*Id*.]  Dr. LeBlond's impression was chronic degenerative neck and back pain with FMS which was stable neurologically; however, he needed to adjust her mediation due to insurance issues.  [*Id*.]

Plaintiff was seen again on January 20, 2011 [R. 263], February 17, 2011 [R. 262], March 17, 2011 [R. 261], July 14, 2011 [R. 282], August 12, 2011 [R. 280] and August 18, 2011 [R. 259] for a medication check.  On each visit, Plaintiff reported no effect of the medication on her judgement, coordination or ability to drive, and reported her pain as a 9/10 prior to beginning treatment and a 6-7 after treatment. [*Id*.]

Progress notes from Plaintiff's three-month follow-up dated September 15, 2011, indicate Plaintiff's pain is worse with walking greater than 100 feet, sitting more than 15 minutes, but is better with rest, medication and changing positions. [R. 278.] The notes also indicate that Plaintiff's anxiety has worsened as a result of her upcoming SSDI hearing and the fact that she is running out of money. [*Id*.]  Plaintiff also reported that she was experiencing lesions on her skin which were, according to her dermatologist, caused by anxiety. [*Id*.]

20

On November 12, 2011, Plaintiff saw Dr. LeBlond to follow up and to fill out paperwork for her disability claim. [R. 276.] Plaintiff reported continued all-over general achiness with intermittent bilateral burning pain down the posterior aspect of both legs. [*Id*.] Her pain is reported to be constant but manageable with medications. [*Id*.] She reported being able to sit for 30 minutes before needing to get up, and being able to stand/walk for 5-10 minutes before needing to sit down again. [*Id*.]  On a general examination, Dr. Leblond noted that Plaintiff appeared alert and oriented, and in no acute distress. [*Id*.] Plaintiff showed normal range of motion of her cervical spine, normal sensation, intact DTRs, back tenderness throughout the lumbar spine, and point tenderness in the musculature in back.  Id.  Dr. LeBlond also noted normal range of motion in all joints and that Plaintiff used a cane to ambulate. [*Id*.]

In an undated Arthritis Medical Source Statement completed by Dr. LeBlond, he indicated that he has treated Plaintiff since May 2002, sees her monthly for refills and every 3–4 months for follow up.  [R. 284.]  He indicates Plaintiff has been diagnosed with Fibromyalgia, cervical spondylosis and lumbar spondylosis and that her prognosis is that she will have chronic pain with the following symptoms: "constant all over achiness with bilateral burning pain down posterior legs; chronic fatigue." [*Id*.] Dr. LeBlond characterized Plaintiff's pain as constant, achy, burning, worse with increased activities such as bending, stooping and prolonged sitting, standing and walking.  [*Id*.] He also indicated that her pain can be rated a 7–8 on a scale of 1–10 on most days. [*Id*.]

With respect to positive objective signs, Dr. LeBlond indicated sensory changes, abnormal posture, tenderness, trigger points, swelling, muscle spasm, muscle weakness

and abnormal gait.  Dr. LeBlond also indicated that emotional factors and psychological conditions, such as depression and anxiety, also contribute to Plaintiff's symptoms and functional limitations. [R. 284–285.]  With respect to the side effects of her medication, Dr. LeBlond indicated that Xanax makes Plaintiff sleepy. [R. 285.]

Based on the above, Dr. LeBlond opined that Plaintiff's impairments can be expected to last at least twelve months. [*Id.*]  He also estimated the following functional limitations if Plaintiff were to be placed in a competitive work environment:

* she could walk less than 1 city block without rest or severe pain
* she could sit for 30 minutes before needing to get up
* she could stand for 5 minutes before needing to sit down or walk around
* she could stand/walk for less than 2 hours in an 8-hour day
* she would require a job that allows shifting positions at will from sitting, standing or walking
* she would need to include period of walking around during an 8-hour day and would need to walk at least every 60 minutes during the 8-hour day, 5-8 minutes each time
* she would need unscheduled breaks every 30 minutes where she would be allowed to either lie down or sit quietly, and would need to get up and walk every 5-10 minutes
* she would need to elevate her legs during prolonged sitting and, in a sedentary job, would need to elevate her legs 100% of the time
* she would need to use a cane or other assistive device why standing or walking
* she could occasionally carry or lift 10 pounds, but never anything greater; should never twist, crouch/squat or climb ladders, and should rarely stoop (bend) or climb stairs
* she has significant limitations with reaching, handling and fingering and should be limited to using her hands, fingers and arms for grasping, manipulations, reaching or overhead reaching to less than 5% of the work day
* she will be off task more than 25% of the day and is incapable of handling even low work stress; high stress situations combined with her anxiety physically cause her to break out in an itchy rash
* she will have good and bad days and will likely be absent from work more than four days per month.

[R. 285–287.]    Dr. LeBlond further opined that Plaintiff's impairments are reasonably consistent with her symptoms and functional limitations described in the evaluation. [R. 287.]

### Dr. Schwartz's Opinion

Dr. Robert G. Schartz of Piedmont Physical Medicine & Rehabilitation, saw Plaintiff on January 6, 2011, for a musculoskeletal examination.    [R. 271.] Plaintiff's chief complaints were of neck and arm pain, followed by back and leg pain. [*Id.*]  According to Plaintiff, the pain began after "her fusion" in May 2000", and she is "status post C5-6 fusion under the care of Dr. Bucci" although Dr. Schwartz did not have surgical records to confirm. Id.  Plaintiff complained of chronic fatigue, limb swelling and symptoms which are weather-sensitive. [*Id.*]  Plaintiff reported that x-rays showed lumbar degenerative disk disease and that she has been "maintained on opiates and physical therapy, chiropractic and injection." She reported that she could sit and stand for 10 minutes and ranks her pain an 8/10. [*Id.*]

Dr. Schwartz performed a musculoskeletal examination of Plaintiff's head, neck, spine, ribs, pelvis and bilateral upper and lower extremities.  He found that

> There are no abnormally palpable lymph nodes in the neck or groin. There are no rashes, ulcers or abnormally palpable scars.  There was no evidence of misalignment, asymmetry, crepitation, defects, tenderness or effusions in the peripheral joints unless otherwise noted.  Coordination for finger to nose, heel to shin, and rapid alternating movements are intact. Peripheral pulses are intact.  There is no evidence of ulceration or trophic change.
>
> Reflexes are symmetric.  Motor strength 5/5. Sensation is intact to pinprick.  Phalen's and Tinel's are negative.  Spurling's is subjectively positive to right with spasm at C4-5 on right.  There is a decreased lumbar lordosis without paraspinal spasm.  Heal and toe walking are intact.  Straight leg raising, Bragard's Fabere's, SI, stretch tests, and Reverse Straight Leg Raising are negative.  Bowstring is positive on right.  She is tender at L5-S1

23

on left.  She does walk antalgically on right.  She is tender at the MCL bilaterally.  Apley's compression and distraction are negative.  She is tender in the right biceps tendon.  She has psoriatic skin changes, in particular across the elbow.

[R. 271.]   Dr. Schwartz's impression of his findings included status post cervical fusion, apparent lumbar DDDZ (degenerative disc disease), and possible diagnosis of fibromyalgia in the presence of psoriatic arthritis. [R. 272.]

With respect to physical limitations, Dr. Schwartz provided the following:[7]

*       Plaintiff is able to sit for 1 hour, stand for ½ hour and walk for ½ hour at a time
*       Plaintiff can occasionally push, pull or carry up to 20 pounds but never more than 20 pounds
*       Plaintiff can never balance but can occasionally kneel, crouch, reach above shoulders and below waist, and frequently at waist level (other restrictions can not be deciphered); no prolonged overhead or below waist activities
*       Plaintiff can occasionally perform handling, fingering and grasping

[R. 273–274.]

**Opinions of Agency Physicians**

**_Consultative Exam by Dr. David G. Cannon_**

Dr. David G. Cannon ("Dr. Cannon") saw Plaintiff on August 11, 2010, and indicated diagnostic impressions of adjustment disorder with depressed mood.  [R. 227.] Dr. Cannon indicated that Plaintiff should be able to manage funds effectively, carry out social and daily self-care activities in an independent and sustained fashion, maintain concentration and pace sufficiently to complete tasks in a timely fashion in a work environment, however, her reported medical difficulties could significantly impact her abilities in this area.

**_Vocational Rehab Consult with Dr. Marcia A. Oliver_**

---

[7]Documents provided by Dr. Schwartz with respect to Plaintiff's physical limitations are extremely hard to read.  Thus, the Court will only include those limitations which it can reasonably decipher from the forms.

Dr. Marcia A. Oliver ("Dr. Oliver") of Oaktree Orthopaedics saw Plaintiff on September 9, 2010 for voc rehab. [R. 228.] X-rays were reviewed and interpreted showing

> Five lumbar vertebrae are noted. No fractures or dislocations are noted. Pedicles are symmetrical. Scoliotic pattern Convex to the right at 13 degrees is noted. Increased sclerotic borders from degenerative arthrosis at L4-S and LS-SI are noted.

[R. 230.]

### *Psychiatric Review Technique by Dr. Lief Leaf*

Dr. Lief Leaf ("Dr. Leaf") conducted a psychiatric review technique on September 10, 2010 and found that Plaintiff's mental impairments were non-severe under the criteria for Affective Disorders or Adjustment Disorder with depressed mood under Listing 12.04. [R. 231–240.] Dr. Leaf appears to have based on his findings on the following: Dr. Cannon's report, Plaintiff's ADL report, a third party ADL report, and "the evidence in file" reflecting mild limitations due to psychological functioning. [R. 241.] Dr. Leaf concluded that, from a mental perspective, Plaintiff is able to perform routine work type activities on an ongoing basis. [*Id.*]

### *Physical RFC Assessment by Dr. Charles K. Lee*

Dr. Charles K. Lee ("Dr. Lee") performed a physical RFC assessment on October 6, 2010 and found that Plaintiff could

* occasionally lift/carry 20 pounds
* frequently lift/carry 10 pounds
* stand/walk about 6 hours in an 8-hour work day
* sit about 6 hours in an 8-hour work day with normal breaks
* push/pull in an unlimited amount
* frequently balance and occasionally climb ramps/stairs ladder/rope/scaffolds, stoop, kneel, crouch, crouch and crawl
* avoid concentrated exposure to extreme cold, vibration and hazards (machinery, heights, etc), but have unlimited exposure to extreme heat, wetness, humidity, noise, fumes, odors, dust, gases, poor ventilation

[R. 243–247.]    Dr. Lee indicated there was no treating source statement regarding Plaintiff's limitations in the file at the time of his assessment.  [R. 247.]

### Medical Evaluation/Case Analysis by Dr. Jose Morelos

Dr. Jose  Morelos ("Dr. Morelos"), an orthopedic specialist, performed medical evaluation on December 15, 2010 with respect to the musculoskeletal aspects of Plaintiff's case and concluded

> I have reviewed the entire medical evidence. The new submissions[8] fail to support her allegation and addresses other complaints other than the musculoskeletal aspect.  I concur w/ the assessment dated 10-12-10[9] and affirm it as written.

[R. 253.]

### Medical Evaluation/Case Analysis by Dr. Gregory McCormick

Dr. Gregory McCormack ("Dr. McCormack") performed a rheumatology  evaluation on January 4, 2011, to address the allegation of fibromyalgia.  [R. 254.]  Dr. McCormack indicated he reviewed medical evidence indicating that Plaintiff suffered from "Chronic degenerative spine pain with probable FMS....Believe that she would not be able to return to work and should pursue SSDI".  [*Id*.]  Dr. McCormack concluded and stated as follows:

> I have reviewed the evidence in file. I concur with the SSA 4734 dated 10/6/10[10] as it pertains to the allegation of fibromyalgia.
>
> The treating source statement (8/24/10) is an issue reserved to the Commissioner.  He provides no rationale or medical basis to justify this opinion as it pertains to the allegation of fibromyalgia.

---

[8]There is no indication in the record identifying the "new submissions" considered by Dr. Morelos, and Dr. Morelos fails to explain why these new submissions fail to support Plaintiff's musculoskeletal complaints.

[9]The Court was unable locate an assessment dated 10-12-10 or to determine what assessment the assessment to which Dr. Morelos refers.

[10]The Physical RFC Assessment by Dr. Charles K. Lee is located at R. 243-47.

[*Id.*]

### *The ALJ's Evaluation of the Medical Opinions*

After reviewing the evidence, the ALJ decided to attribute significant weight to the State agency medical consultants Dr. Lee, Dr. Morelos, and Dr McCormack, some weight to consultative examiner Dr. Schwartz, and limited weight to the opinion of treating physician Dr. LeBlond. [R. 24.] The ALJ explained his assignment of weight as follows:

> I have attributed limited weight to the opinion of Dr. LeBlond as it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and inconsistent with the other substantial evidence in the record (SSR 96-2p). Dr. LeBlond assessed the claimant with worsening cervical and lumbar back pain and concluded that the claimant is unable to return to work (Exhibit 3F). Dr. LeBlond subsequently completed an Arthritis Medical Source Statement in which he notes diagnoses of fibromyalgia, cervical spondylosis, and lumbar spondylosis marked by chronic pain. This physical condition is affected by psychological conditions that include depression and anxiety. Dr. LeBlond found the claimant capable of sitting, standing, and/or walking for less than 2 hours each out of an 8-hour workday. She is limited to occasionally lifting and/or carrying less than 10 pounds and would need to take unscheduled work breaks every 30 minutes. The claimant is limited to rarely stooping, bending, and climbing stairs and never twisting, crouching, squatting, and climbing ladders. She is limited to less than 5% usage of her upper extremities for grasping, fine manipulations, and reaching. She is likely to be off task more than 25% of the time and is incapable of even low stress work. The claimant is also likely to miss more than four days of work each month as a result of her condition (Exhibit l7F).

> However, these findings are inconsistent with weight of the other medical evidence. For instance, on June 6, 2011, Dr. Miller noted that the claimant appeared well nourished, well developed and in no acute distress (Exhibit l4F, Page 2). Consultative examiner Dr. Schwartz noted that an examination of the claimant revealed no evidence of misalignment, asymmetry, crepitations, defects, tenderness, or effusions in the peripheral joints. Reflexes were symmetric and motor strength normal. Sensation was intact and Phalen and Tinel signs were negative. Heel and toe walking were intact with negative straight leg raising (Exhibit l5F).

> Furthermore, Dr. LeBlond's findings as indicated throughout his treatment records are inconsistent with the disabling findings stated above. For instance, on June 28, 2010, Dr. LeBlond noted that the claimant's

27

chronic fatigue has improved with medication and psychologically she is doing ok (Exhibit 13F, Page 10). He noted that the claimant reports some improvement with medication. She rated her pain as 5 on a scale of 1 to 10. The claimant also reports tolerable neck pain. Dr. LeBlond noted that the claimant's chronic fatigue has improved with medication and psychologically she is doing ok. On December 23, 2010, Dr. LeBlond noted a mild range of motion restriction in the back and he concluded that the claimant's degenerative neck and back pain and fibromyalgia are stable neurologically (Exhibit 13F, Page 10). Dr. LeBlond predicated his opinion on adverse affects from medications, however, his records repeatedly note no adverse effects from medications, no side effects from medications, he specifically noted medications do not impaired judgment coordination or ability to drive (Exhibits 16 F, 13 F, and 3F).

[R. 24–25.]

With respect to Dr. Schwartz's, the ALJ explained the weight assigned to the

doctor's opinion as follows:

> Dr. Schwartz noted postural limitations but the records are not legible. He also noted occasional handling and fingering and standing/walking up to 1 hour each out of an 8-hour workday (Exhibit 15F). However, I find the medical record does not support his limitations regarding handling, fingering, standing and walking. Specifically, it is inconsistent with the findings of the State agency medical examiners Dr. Lee, Dr. Morelos, and Dr. McCormack, all of whom noted no or fewer limitations in handling, fingering, standing, and standing/walking. Dr. Schwartz is not a treating source; he saw the claimant on one occasion for an evaluation and opinion. Physical examinations are inconsistent with his opinion. Carpal tunnel signs were negative coordination, finger to nose and heel toe walking and rapid alternating movement was intact. Strength and sensation when normal (Exhibits 15F, 13F, and 3F). Strength and sensation were repeatedly noted to be normal (Exhibits 16 F, 13F, and 3F). Based on these diagnostic tests and physical exams I conclude the evidence does not support his manipulative limitations. Finally, inconsistent with this opinion are activities of daily living like cooking, doing dishes, laundry, folding clothes, vacuuming, taking out the trash, cleaning the bathroom, driving, and shopping indicate activities illustrating postural and manipulative functions inconsistent with this opinion.

[R. 25–26.]

With respect to the State agency physician opinions, the ALJ attributed significant

weight to these opinions as he found Dr. Lee's opinion (which was affirmed by Drs.

28

Morelos and McCormack) was "consistent with the evidence of record upon my independent review." [R. 26.]

### Analysis

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.152799(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of

> the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

**Discussion**

In this case, the Court finds the ALJ did not properly consider or explain his decision to discount the opinion of Dr. LeBlond, who treated Plaintiff for over nine years, in light of the evidence of record. First, the ALJ determined that Dr. LeBlond's opinion was not supported by the evidence of record, reciting only evidence which supported his decision, and failing to address the evidence of record which supported Dr. LeBlond's findings. For

example, the ALJ rejected certain functional limitations imposed by both Dr. LeBlond and

Dr. Schwartz based on state agency physician opinion as being unsupported by the

evidence. As addressed above, both Dr. LeBlond and Dr. Schwartz concluded that Plaintiff

was limited in her ability to reach, handle and finger; Dr. LeBlond indicated Plaintiff should

be limited in using her hands, fingers and arms for grasping, manipulating and reaching

overheard. A review of Dr. LeBlond's treatment notes show that Plaintiff, who was on a

fairly high does of medication [R. 225], showed "positive objective signs" indicating

"sensory changes, abnormal posture, tenderness, trigger points, swelling, muscle spasm,

muscle weakness and abnormal gait." [R. 284.] On at least one visit, Plaintiff complained

that leaning forward caused swelling and spasms in her back; on exam, back tenderness

was noted. [R. 276.] Plaintiff also complained of pain radiating down her right arm and, on

examination by Dr. Schwartz, tenderness in the right biceps tendon was noted. [R. 271.]

 Dr. LeBlond also diagnosed Plaintiff as having chronic neck and upper and lower back

pain with progressive worsening. [R. 225.]

It is also undisputed that, although not prescribed, Plaintiff ambulates with a cane.

[*See, e.g.*, R. 20–21, 65–66, 171, 188, 271, and 276.] Dr. LeBlond also notes that, while

engaging in occasional standing and walking, Plaintiff must use a cane or other assistive

device. [R. 286.] Appendix One (Listing of Impairments) of the regulations provides that

"[t]he requirement to use a hand-held assistive device may also impact on the individual's

functional capacity by virtue of the fact that one or both upper extremities are not available

for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P,

App. 1, § 1.00(J)(4). SSR 96-9p, 61 Fed.Reg. 34,478–01, at 34,482 (July 2, 1996). Thus,

unless the ALJ found that Plaintiff was not required to use a cane to ambulate, he should

31

have taken the use of a cane into consideration at least in determining Plaintiff's ability to lift, carry, push and pull, which Dr. LeBlond and Dr. Schwartz apparently considered in finding Plaintiff to be more restricted in these activities than found by the ALJ.

Upon consideration, the Court finds that the ALJ not only failed to address all of the evidence of record with respect to the findings of Drs. LeBlond and Schwartz, which could support the imposition of more restrictive limitations, but he rejected the opinions of Drs. LeBlond and Schwartz regarding these limitations as "inconsistent with the findings of the State agency medical examiners Dr. Lee, Dr. Morelos, and Dr. McCormack" who either made no findings whatsoever regarding Plaintiff's abilities in these areas, or failed to explain what evidence supported their determinations.  [R. 26.]  To the contrary, Dr. Lee, whose opinion was issued prior to the opinions of Drs. LeBlond and Schwartz, provided a very limited discussion or explanation of the evidence considered, noted that Plaintiff's Fibromyalgia was undocumented (although the ALJ found it to be a severe impairment), and provided no explanation for his determination that the evidence established no limitations with respect to fingering, reaching, handling, manipulating or grasping. [*See* R. 245.]  Because Dr. Lee provided no basis for his conclusion regarding the existence of restrictions on Plaintiff ability to reach, finger, handle, or grasp which the Court can review, the ALJ was required to explain the basis for his dismissal of these opinions based on the record evidence; he failed to do so.

The requirement that an ALJ must give specific reasons for discounting a treating physician's testimony is well-established. The Agency has ruled that "the notice of the determination or decision ... must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." SSR 96–2p. The undersigned cannot address the remaining issues until the ALJ conducts a proper analysis of the treating physicians' opinion with regard to Plaintiff's physical limitations. Once the ALJ conducts a proper analysis with respect to the treating physicians' opinion, he should reassess Plaintiff's RFC for a proper review.  The court refrains from reviewing any further contentions at this time.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly evaluate the medical evidence of record, specifically the opinion of Plaintiff's treating physician, a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ failed to properly evaluate her credibility and to determine her ability to perform other occupations in the economy.[11]

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation. .

IT IS SO RECOMMENDED.

---

[11]Although not raised by the Plaintiff, the Court directs the ALJ, on remand, to adequately explain his consideration of Fibromyalgia, which was found to be a severe impairment, under a closely analogous listed impairment.  *See*, 20 C.F.R. § 404.15269(b).  Further, the ALJ is directed to provide an explanation of his consideration of Plaintiff's impairments in combination, as required in this circuit.  See, Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989)*; Aurand v. Astrue*, 6:07–3968–HMH, 2009 WL 364389 (D.S.C. Feb.12, 2009) (remanding with instruction that ALJ consider severe and medically-determinable non-severe impairments in combination.)

s/Jacquelyn D. Austin
United States Magistrate Judge

January 30, 2014
Greenville, South Carolina